**The BODY SHOP, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SCHANZ), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 4, 1998.

Decided Oct. 16, 1998.

Reconsideration and Reargument Denied Dec. 11, 1998.

Michael A. Cohen, Pittsburgh, for petitioner.

Robert A. Seewald, Pittsburgh, for respondent.

Before McGINLEY and PELLEGRINI, JJ., and LORD, Senior Judge.

PELLEGRINI, Judge.

The Body Shop (Employer) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) granting in part the penalty and review petitions filed by Gerald Schanz (Claimant).

Claimant suffered a low back injury on July 11, 1990, while working for Employer as an auto body technician. He began receiving workers' compensation benefits pursuant to a Notice of Compensation Payable that indicated he suffered from an acute low back

strain.[1] In July and October of 1992, respectively, he had cervical and lumbar disc surgeries, but Employer refused to pay for those surgeries, as well as for the related bills for his hospital stays, physical therapy, prescriptions, therapy and mileage costs and did not file a petition for review of those bills. As a result, Claimant filed a "Petition to Review Medical Treatment and/or Billing" and a "Petition for Finding of Violation of the Terms of the Workmen's Compensation Act and/or Regulations and/or Assessment of Penalties", alleging in both that he incurred $32,762.91 in reasonable and necessary medical bills that were directly related to his work injury, but that Employer had denied payment of those bills. He requested review and payment of those bills, attorney's fees and an additional 20%, or $6,552.58, of past due medical bills as a penalty for the unreasonable delay in payment. Employer filed an answer denying those allegations.

At the hearing before the WCJ, Claimant testified that he had continually suffered from low back pain, leg pain, groin pain and bladder problems ever since he had been injured at work. He stated that although he had undergone two prior lumbar surgeries in the 1980's, with the last one being performed in 1987, the pain that he was suffering was related to his work injury and not to those surgeries. He continued to testify that he sought treatment from various doctors for his back pain and eventually underwent surgery on his lower back, but that he still suffered from back pain. Regarding his neck pain, Claimant admitted that he did not receive any treatment for his neck in the first three months after the injury, but also underwent cervical surgery that was helpful in alleviating the pain.

In further support of his contention that both of his surgeries and medical bills were related to his work injury, Claimant presented the medical testimony of orthopedic surgeon Basil A. Marryshow, M.D. Dr. Marryshow testified that he first treated Claimant on July 25, 1990, at which time he

---

1. Employer filed a termination petition on October 24, 1990, that was denied by a WCJ based upon the testimony of Claimant and his treating physician, Basil Marryshow, M.D., that Claimant was suffering from a herniated lumbar·disc at the L5–S1 level and had not fully recovered from his work injury. The WCJ also ordered Employer to pay for Claimant's medical expenses that it had not paid to date as well as attorney fees and costs.

complained of low back pain, and that he initially diagnosed Claimant with an acute low back sprain and discogenic disease of the L5–S1 area. Dr. Marryshow stated that because physical therapy and medications did not improve Claimant's condition, an MRI and myelogram with a CT scan were performed on Claimant, both indicating a herniated disc at the L5–S1 level for which surgery was performed. Regarding Claimant's neck pain, Dr. Marryshow stated that Claimant did not complain of neck pain until May 13, 1992, and based on an MRI showing a disc herniation at C6–C7, Claimant underwent an anterior cervical fusion. It was Dr. Marryshow's opinion that both Claimant's lower back pain and lumbar surgery, as well as his neck pain and cervical surgery, were the result of his work injury.

Claimant also presented the expert testimony of Donald W. Marion, M.D., the board-certified neurosurgeon who performed his lumbar and cervical disc surgeries. Dr. Marion stated that he first examined Claimant on July 6, 1992, at which time he complained of severe low back pain and neck pain. Dr. Marion stated that as a result of Claimant's herniated disc, he suffered a right C–7 radiculopathy. Although he performed the cervical surgery, Dr. Marion stated that he was not able to give an opinion as to whether there was a causal relationship between Claimant's work injury and his neck herniation and pain because he reviewed numerous medical reports from physicians who saw Claimant prior to his examination, none of which referred to neck pain. Similarly, Dr. Marion also performed the lumbar surgery but was unable to opine whether that was work related or due to some other cause because medical reports by other physicians who saw Claimant indicated there was no compression of his discs after the fall. However, on cross-examination, Dr. Marion admitted that Claimant's symptoms in his July 25, 1990 examination by Dr. Marryshow were consistent with a herniated disc, but that he would still have to view the diagnostic films in order to conclude whether Claimant's lumbar disc herniation was related to his work injury.

In opposition to Claimant's allegations, Employer offered the expert testimony of board-certified neurologist John B. Talbott, M.D. Dr. Talbott testified that he performed a review of Claimant's medical records and based on the diagnostic films he reviewed, there was a degeneration of the L5–S1 disc and soft tissue changes. It was his opinion that these were the result of Claimant's surgeries prior to his work injury. Dr. Talbott opined that Claimant's records did not evidence a herniated disc of the lumbar spine as of March, 1991; however, he stated that he knew Claimant underwent lumbar surgery in 1992 based on a subsequent MRI which showed a disc herniation. Dr. Talbott testified that he did not review that film, but that if it did reveal disc herniation, the surgery had been appropriate but was unrelated to the work injury based on all of the other diagnostic films.

Regarding Claimant's back injury, the WCJ found that Claimant had sustained a work-related injury to his low back based on his credible testimony related to that injury because he had consistently complained of low back pain without any intervening injury. The WCJ also found Dr. Marryshow's testimony credible that Claimant's lumbar surgery was related to his work injury and dismissed Drs. Talbott and Marion's testimony because Dr. Marryshow had been Claimant's treating physician from 1990 through 1992, and he indicated in his records that Claimant had a lumbar disc problem since 1991 with that diagnosis consistently supported by Claimant's complaints. The WCJ specifically noted that Dr. Marion was unable to give an opinion because he never reviewed the actual diagnostic films that were relied upon for the surgery. As to Claimant's neck injury, the WCJ found that Claimant did not sustain a work-related neck injury relying on Dr. Talbott's testimony and dismissing Claimant's and Dr. Marryshow's testimony because Claimant did not mention any neck pain to Dr. Marryshow for almost two years after his work injury occurred.

The WCJ then concluded that Employer did not meet its burden of proving that the medical expenses incurred by Claimant regarding his low back were not causally relat-

ed to his work injury and that the treatment for that injury was unnecessary or unreasonable. She further concluded that Employer did not have a reasonable basis to contest the payment of the medical bills for treatment to Claimant's low back, including his lumbar surgery. However, the WCJ did conclude that Claimant had not established that his neck pain and surgery were related to his work injury and that Employer had a reasonable basis to contest those related medical expenses. The WCJ then ordered Employer to pay Claimant the costs of his medical expenses related to his back plus 10% interest and a 20% penalty, as well as a 20% attorney fee based on the unpaid medical expenses related to the back injury and his costs in the amount of $6,388.75.

Employer filed an appeal with the Board arguing that the WCJ erred in finding that Claimant's medical expenses relating to his back, including his surgery, were reasonable, necessary and work related and that its contest was unreasonable so that the award of penalties was appropriate. The Board affirmed all aspects of the WCJ's decision but amended it to explicitly find that Employer was in violation of the Workers' Compensation Act (Act)[2] when she awarded penalties of 20% of the outstanding related medical bills. This appeal by Employer followed.[3]

Employer first contends that the WCJ and Board erred in determining that the testimony of Dr. Marryshow was competent, unequivocal and supported by any findings of fact regarding causation.[4] Specifically, Employer points out that Dr. Marryshow testified that diagnostic studies in January of 1993 revealed that Claimant's bulging disc was at the L4–L5 level with evidence of arthritis and degenerative changes and that the L4–L5 disc was not herniated. Nonetheless, Employer argues that the WCJ found that Dr. Marryshow had consistently diagnosed Claimant's condition as an acute low back sprain and discogenic disease of the L5–S1 area, even though he had testified otherwise.

■ Our review of Dr. Marryshow's testimony indicates that Employer has taken Dr. Marryshow's testimony out of context in an effort to support its contention. While Dr. Marryshow did state that Claimant had a bulging disc at L4–L5 that was not herniated, he previously had explained that sometimes the L5–S1 was referred to as L4–L5, even though they were not the same disc, for the following reason:

> I have to explain why sometimes we would refer to it as L4–L5 and L5–S1. He had what looked like a transitional vertebra. So depending on if you counted up or counted down, you may conclude it's L4–L5 or L5–S1, meaning that he had one sacral vertebra that took on the appearance of a lumbar vertebra, and this is quite common. So you may have people sometimes with a transitional vertebra that may be – well, apparent confusion is not actually what it is. If you count up or you count down, if you count down, then it's an L5–S1. If you go up, it's 4–5. But it's the same level that we're talking about. (July 22, 1993 Transcript at p. 17.)

Dr. Marryshow further explained:

> Q. Doctor, the bulging of the L4–L5, how does that relate to your diagnosis and Mr. Schanz' surgery for the L5–S1?
>
> A. There is no way of knowing how this doctor counted, whether it was up or down. Apparently, he counted down because he started with L1–L2, L3–L4. That correlated fairly well. Apparently, he has a small bulge of a disc at L4–L5 and he has scarring at L5–S1, which is the disc below that. (July 22, 1993 Transcript at p. 29.)

2. Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§ 1 – 1041.1.

3. Our scope of review is limited to determining whether constitutional rights were violated, errors of law committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704.

4. Employer notes in its brief that prior to its appeal reaching this Court for disposition, it paid Claimant for all outstanding medical expenses related to his back injury, attorney fees and penalties. It argues that the only purpose of this appeal is to seek a favorable determination so that it may obtain a refund from the Supersedeas Fund for the penalty it paid to Claimant that it did not believe was justified. This argument is irrelevant.

Because Dr. Marryshow's testimony is not equivocal, it constitutes substantial evidence to support the WCJ's finding that Claimant's surgery was necessitated by a work-related injury.

■ Employer also argues that the WCJ and Board erred in assessing a 20% penalty because it did not unilaterally cease paying Claimant medical benefits as he was not entitled to medical benefits for any injury other than a low back strain since he did not notify Employer that he suffered from a herniated disc.[5] Although Claimant notified Employer that he suffered from an acute low back strain, and the notice of compensation payable indicated the same, notice under Section 312 of the Act, 77 P.S. § 632,[6] does not require that a claimant give an employer an exact diagnosis, but only a reasonably precise description of the injury. *State Workmen's Insurance Fund v. Workmen's Compensation Appeal Board (Wagner)*, 677 A.2d 892 (Pa.Cmwlth.1996).

■ In this case, when Claimant initially was injured and examined, he was diagnosed with an acute low back strain. However, after having continued pain and further diagnostic studies were performed, the diagnosis—not the injury—changed to a herniated disc. Because the diagnosis of a herniated disc does not constitute a separate injury but is just another diagnosis of the initial injury, *Wagner*, Claimant's original notice to Employer sufficiently alerted it of the work-related injury to his back and gave it an opportunity to investigate the reasonableness and necessity of Claimant's medical bills. Additionally, Employer was aware as early as February of 1991 that Claimant had been diagnosed with a herniated lumbar disc by

Dr. Marryshow when he testified to the same to rebut Employer's termination petition. Because an employer's unilateral refusal to pay medical expenses for a work-related injury without filing a review petition is a violation of Section 306(f)(2)(ii) of the Act, 77 P.S. § 531(2)(ii),[7] *Johnson v. Workmen's Compensation Appeal Board (Albert Einstein Medical Center)*, 137 Pa.Cmwlth. 176, 586 A.2d 991 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 530 Pa. 648, 607 A.2d 257 (1991), and Employer had sufficient notice of Claimant's work-related injury, the imposition of a 20% penalty was proper.

■ Finally, Employer contends that the WCJ and Board erred in determining that it did not have a reasonable basis for contesting Claimant's medical expenses related to his low back injury and in awarding counsel fees because it presented medical evidence that conflicted with the medical evidence presented by Claimant. However, because Employer's refusal to pay Claimant's medical bills was a violation of the Act, there could be no reasonable contest and the award of counsel fees was also proper.

Accordingly, the decision of the Board is affirmed.

### ORDER

AND NOW, this 16th day of October, 1998, the order of the Workers' Compensation Appeal Board, dated April 17, 1998, at No. A96–1248, is affirmed.

---

5. Employer also argues that penalties should not be assessed because Dr. Marryshow's testimony was not competent to establish a causal connection between Claimant's work injury and his back surgery. However, because we have determined that Dr. Marryshow's testimony was competent, that argument also is without merit.

6. Section 312 of the Act provides:
   The notice referred to in section 311 shall inform the employer that a certain employe received an injury, described in ordinary language, in the course of his employment on or about a specified time, at or near a place specified.

7. Section 306(f)(2)(ii) of the Act provides:

   The employer shall have the right to petition the department for review of the necessity or frequency of treatment or reasonableness of fees for services provided by a physician or other duly licensed practitioner of the healing arts. Such a petition shall in no event act as a supersedeas, and during the pendency of any such petition the employer shall pay all medical bills if the physician or other practitioner of the healing arts files a report or reports as required by subparagraph (I) of paragraph (2) of this subsection.