IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Felicia Gonzalez, : 
                Petitioner : 
         : 
      v. : 
         : 
Department of Military and :   No. 955 C.D. 2021
Veterans Affairs (Workers' : 
Compensation Appeal Board), :   Submitted: March 11, 2022
              Respondent : 

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE LORI A. DUMAS, Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                       FILED: May 18, 2023

Felicia Gonzalez (Claimant) petitions for review of the July 26, 2021 Order of the Workers' Compensation Appeal Board (Board). The Board affirmed a decision of a Workers' Compensation Judge (WCJ) that denied Claimant's claim petition (Claim Petition) seeking workers' compensation benefits for mental injuries due to abnormal working conditions. Upon review, we affirm the Board's order.

## I.    FACTS AND PROCEDURAL HISTORY

The relevant facts of this appeal are as follows. On February 28, 2018, Claimant submitted a Claim Petition alleging that on October 28, 2015, while employed by the Department of Military and Veteran Affairs (Employer) at the Hollidaysburg Veteran's Home, she suffered from the following injuries: "peripheral

neuropathy, worsened by cold weather, getting in and out of trucks, as well as psychological stress from work environment." (Supplemental Reproduced Record (S.R.R.) at 2b.) Claimant alleged that notice of her work-related mental injury was provided on several occasions to Employer with the first notice being provided on May 19, 2015 and then again on September 25, 2015. *Id.* Employer filed an answer to Claimant's Claim Petition denying the allegations and requesting her Claim Petition be dismissed. (S.R.R. at 6b-9b.)

## A. Before the WCJ

Before the WCJ, Claimant testified that she began working for Employer on May 19, 2008, in the Activities Department. (S.R.R. at 27b.) In 2010, Claimant transferred to the Garage Area, where her duties were transporting residents to and from doctor visits and activities, transporting food and laundry, and washing/maintaining the vehicles. (S.R.R. at 28b-29b.) Claimant testified that in October 2013, she began working with Bruce French at night, and soon thereafter in November 2013, Mr. French began using foul language at work. (S.R.R. at 30b-31b.) Claimant reported Mr. French's profanity to her supervisor. (S.R.R. at 32b.)

Claimant testified that in February 2014 Mr. French made several derogatory comments, including "I hate fat people." (S.R.R. at 34b.) Claimant further testified that sometime after this, there was an incident where Mr. French pulled his truck right in front of hers and did not allow her to pass. (S.R.R. at 35b.) On another occasion, Claimant testified that Mr. French "gunned" the motor of the truck to scare Claimant while walking, and Claimant believed that if she did not move, he would have hit her. (S.R.R. at 35b-37b.) Claimant testified that in December 2014 or January 2015, an employee spoke about how he was going to shoot another employee between the eyes. (S.R.R. at 37b-38b.) She spoke with her supervisor about the incident, and

2

as she left her supervisor's office, Mr. French and other employees started laughing. *Id.* In May 2015, Claimant reported the alleged incidents with Mr. French to her union, which report was to be given to Human Resources. *Id.*

Also, Claimant testified that in May 2015 her family physician, Dr. Gregory Sweeney, prescribed medication for anxiety and depression. (S.R.R. at 39b-40b.) Claimant testified that in July 2015, she was diagnosed with neuropathy and began treating with Dr. Kivitz[1] for difficulty sleeping, pain, and muscle spasms. (S.R.R. at 44b-46b.) Claimant testified that she had pins and needles in her back that made it difficult for her to get in and out of the truck and she had pain while working. *Id.* Claimant stated she also saw Dr. Clark, a neurologist, for her neurologic condition. (S.R.R. at 46b-47b.)

In August 2015, Mr. French left the garage area to work in the storeroom area. (S.R.R. at 48b.) A week later, Claimant removed a picture of him near the time clock. *Id.* Claimant testified that the next day she came to work to find a new, bigger picture of Mr. French that was 20 inches in the air above her workstation. She reported this incident to her supervisor and broke down. (S.R.R. at 48b-49b.) Claimant stated she was prescribed Xanax right after her shift ended on September 25, 2015. *Id.* Claimant further stated that prior to September 25, 2015, she was prescribed Lyrica because it addressed the pins and needles in her back as well as the depression and anxiety. (S.R.R. at 49b-50b.)

At the end of October 2015, Claimant had Dr. Sweeny and Dr. Kivitz fill out disability paperwork because she had difficulty doing her regular job duties. (S.R.R. at 41b, 95b.) Her last day of work was November 2, 2015. (S.R.R. at 41b, 95b.) Claimant testified that she spoke with Jennifer Perry, her retirement

---

[1] Dr. Kivitz's first name was not provided in the record.

3

representative, to process her disability retirement pension request. (S.R.R. at 53b.) Claimant told Ms. Perry that she ended her employment privately to prevent any further harassment. *Id.*

Claimant presented the deposition testimony of Dr. Amanda Cattoi, M.D., who is a board-certified family medicine specialist, but is not board certified in psychology or psychiatry. (S.R.R. at 112b-13b, 242b-78b.) Dr. Cattoi began treating Claimant on January 3, 2017, and diagnosed her with fibromyalgia and anxiety. (S.R.R. at 252b.) Claimant was taking Xanax and Nortiptyline at the time. *Id.* Although she did not have Claimant's work history, Dr. Cattoi testified that Claimant's psychiatric symptoms were due to stressors at work and at home. (S.R.R. at 253b-54b.) Dr. Cattoi recalled that Claimant did not believe she could perform all of her work duties partially due to her fibromyalgia pain and partially because she felt she was being bullied at work. *Id.* Dr. Cattoi testified that Claimant's anxiety, depression, and panic attacks contribute to her fibromyalgia condition and when Claimant is under stress her fibromyalgia is worse. (S.R.R. at 256b.) Dr. Cattoi could not identify a specific work incident that contributed to Claimant's mental injury but felt comfortable testifying that "the situations at work contributed to her anxiety." (S.R.R. at 257b-258b.) Dr. Cattoi stated that she could not render any opinions of Claimant's condition prior to January 2017. (S.R.R. at 260b-62b.) Dr. Cattoi testified that she was not provided any information regarding the nature of the bullying or any history of what occurred at work, including specific details, span of time, or frequency of the alleged incidents. (S.R.R. at 263b-64b.) Dr. Cattoi further testified that Claimant's inability to work was due to her fibromyalgia. (S.R.R. at 278b.)

Employer presented the testimony of Mr. French, who denied using any profanity in his interactions with Claimant and denied ever referring to or commenting

4

upon the Claimant's physical appearance. (S.R.R. at 143b, 146b.) Mr. French stated that Claimant may have misinterpreted a conversation he was having with a co-worker about a diet. (S.R.R. at 146b-47b.) Mr. French testified that he did not recall stopping a vehicle in front of Claimant and stated that his relationship with Claimant started out "okay" but there were times they simply did not get along. (S.R.R. at 147b-48b, 151b.)

Additionally, Employer presented the deposition testimony of Human Resources Analyst, Sally McClellan. Ms. McClellan testified that she conducted an investigation based upon the written complaint filed by Claimant in May 2015. (S.R.R. at 185b-87b.) During her investigation, she spoke with 8 to 10 of Claimant's co-workers, including Mr. French, and it was ultimately determined that Claimant's allegations were unsubstantiated. (S.R.R. at 187b-88b, 192b-93b.) Ms. McClellan testified that "at most, the situation between [Claimant] and Mr. French was a personality conflict." (S.R.R. at 192b.)

The WCJ found the testimony of both Mr. French and Ms. McClellan to be credible. (Decision, 09/30/20, Finding of Fact (FOF) Nos. 65-66.) The WCJ determined that although Claimant's testimony was credible, it was not corroborated to establish objective abnormal working conditions. *Id.* The WCJ determined that Dr. Cattoi's testimony was not competent to support a finding that Claimant suffered a mental injury because Dr. Cattoi's opinions relied on Claimant's subjective reaction to the work incidents. (FOF No. 67.) The WCJ further determined that Dr. Cattoi clearly testified that Claimant's disability was based upon her fibromyalgia condition. (FOF No. 62.)

Regarding timely notice of Claimant's mental injury, the WCJ determined that Claimant did not present any note from a physician and did not indicate herself that she was unable to work due to a mental injury. (FOF No. 45.) The WCJ found

5

that Claimant told Ms. McClellan "she was fine" from May 2015 to August 2015. (FOF No. 46.) The WCJ found that after the September 25, 2015 photo incident, Employer did not receive any documentation from Claimant's physician indicating she was unable to perform her work duties. (FOF No. 48.) Additionally, the WCJ found that after a conversation on October 22, 2015, between Claimant, her supervisor, and Ms. McClellan, Claimant was asked if she would like a different job but she declined. (FOF No. 49.) During the October 22, 2015 conversation, the WCJ found that this was the first time Ms. McClellan heard of Claimant's issues with her feet; however, Claimant did not indicate that she was having problems with her feet that were caused or worsened by her job duties. (FOF No. 50.) The WCJ concluded that Claimant did not provide timely notice to Employer of a work-related injury in the nature of a psychological injury. (Conclusions of Law (COL) No. 3.)

The WCJ accordingly denied Claimant's Claim Petition. Claimant appealed to the Board.

## B. Before the Board

Before the Board, Claimant argued that the WCJ erred in concluding that she did not satisfy her burden to prove that she sustained a work-related mental injury caused by abnormal working conditions. The Board affirmed the WCJ. The Board determined that Claimant was unable to meet her burden of proof because the WCJ did not accept Claimant's testimony and Dr. Cattoi's expert medical opinion. (S.R.R. at 405b.) The Board further noted that the WCJ did not find that Mr. French harassed Claimant, but instead that Claimant and Mr. French did not get along. Accordingly, the Board agreed with the WCJ that Claimant's working conditions were not abnormal. (R.R. at 405b-06b.)

Claimant now appeals to this Court.

6

## II.  ISSUES

On appeal, [2] Claimant raises two issues: (1) whether the WCJ and Board erred in determining Claimant did not give timely notice of a work-related mental injury, and (2) whether the WCJ and Board erred in concluding that Claimant did not prove a mental injury due to objective abnormal working conditions.[3]

## III.  DISCUSSION

Claimant argues that the WCJ erroneously concluded that she failed to produce evidence that she gave timely notice to Employer of her mental work-related injury.  (Pet'r's Br. at 18).   Claimant maintains that she gave notice to Employer on May 19, 2015 and September 25, 2015, and notes that her supervisor should have known about her work-related mental injury from prior conversations.

For a claimant to be eligible for compensation, she must provide notice of the *injury* to her employer within 120 days of the injury.  Section 311 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §631; *Gentex v. Workers' Compensation Appeal Board (Morack)*, 23 A.3d 528, 534 (Pa. Cmwlth. 2011); *see also Rawling v. Workmen's Compensation Appeal Board*, 414 A.2d 447 (Pa. Cmwlth. 1980) (it is well established that a claimant must inform the employer of an *injury* within 120 days, not merely notice of an *incident*).  In cases where the connection between an employee's injury and her employment is not clear, the notice period does not begin to run until the employee knows or should have known, by the exercise of due diligence, of the existence of her injury and its possible

---

[2] Our review in a workers' compensation appeal is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated.  *City of Scranton v. Workers' Compensation Appeal Board (Roche)*, 909 A.2d 485, 486 n.1 (Pa. Cmwlth. 2006).

[3] Claimant's issues have been reordered to facilitate disposition.

relationship to her employment. Section 311 of the Act, 77 P.S. §631; *Borough of Norwood v. Workmen's Compensation Appeal Board (Wiker)*, 538 A.2d 143 (Pa. Cmwlth. 1988). Further, the question of whether an employee provided adequate notice of her work injury is a mixed question of law and fact. *Gentex*, 23 A.3d at 534. The more fact-intensive the inquiry, the more deference a reviewing court should give to the findings of fact. *Id.* The Pennsylvania Supreme Court also noted that in construing the Act, a reviewing court must be mindful that "the Act was intended to benefit the injured employee, and, therefore, must be construed liberally in the employee's favor in order to effectuate its humanitarian objectives." *Id.* at 534. "As such, borderline interpretations are to be decided in favor of the claimant." *Id.*

Initially, we note that Claimant's Claim Petition was filed on **February 28, 2018**. (S.R.R. at 5b.) The alleged incident which caused Claimant's mental injury is asserted to have occurred on **October 28, 2015**; however, Claimant is alleging that notice was provided to Employer on **May 19, 2015**, and **September 25, 2015**. (S.R.R. at 2b-3b.) In May 2015, Claimant had filed a formal complaint regarding Mr. French's harassment prior to the date of her alleged work-related mental injury. The WCJ found Ms. McClellan's testimony credible that Claimant did not provide notice of a work-related mental injury, as she failed to report that she had a stress-related or psychological condition because of the alleged work incidents with Mr. French. The WCJ specifically determined that Claimant "did not present any note from a physician and did not indicate herself that she was unable to continue working because of any stress[-]related or psychological condition. She continued to work." (FOF No. 45.) Additionally, the WCJ found that from May 2015 to August 2015, Claimant told Ms. McClellan that she was fine. (FOF No. 46.) After the September 25, 2015 photo incident, the WCJ further found that Ms. McClellan did not receive any documentation

8

from a physician or notice from Claimant indicating that she was unable to perform her job duties. (FOF No. 48.) The WCJ also found that on October 22, 2015, after a conversation with Claimant, her supervisor, and Ms. McClellan, Claimant was asked if she would like a different job but did not request a transfer at that time. (FOF No. 49.) During this October 22, 2015 conversation, Ms. McClellan testified this was the first time she found out about Claimant's issues with her feet; however, Claimant did not indicate to Ms. McClellan that the problem she was having with her feet was caused or worsened by her work activity. (FOF No. 50.)

Moreover, the WCJ found that "**Claimant clearly testified that she avoided reporting a psychological work injury as she proceeded to apply for disability retirement based on her condition of fibromyalgia**." (FOF No. 64.) (emphasis added). As noted by the Board, Claimant testified as follows:

> I just can't take any of this. I don't know what more to do because it's not going to change . . . and **nobody had no [sic] idea that I was leaving** because I didn't want to be harassed anymore, so I did it privately, **so nobody knew anything**, not even the person that I talked to everyday. **I did not let anybody know**. Because I didn't want anymore harassment.

(S.R.R. at 53b.) (emphasis added). Based on the credible evidence of record, the WCJ concluded that "Claimant did not give timely notice of a work-related injury in the nature of a psychic injury." (COL No. 3.)

Because the WCJ's findings are supported by substantial evidence, we cannot disturb them on appeal. *Thompson v. Workers' Compensation Appeal Board (USF&G Co.)*, 781 A.2d 1146, 1150 (Pa. 2001). Accordingly, we conclude that the

9

WCJ did not err in determining that Claimant failed to satisfy the notice requirement of the Act. We, therefore, affirm the order of the Board. [4]

_____

PATRICIA A. McCULLOUGH, Judge

_____

[4] Although we need not reach the merits of the Claim Petition, even if Claimant had provided Employer with timely notice of her alleged mental injury, the WCJ committed no error in concluding that Claimant did not meet her burden of proving she sustained a disabling work-related mental injury. In a workers' compensation case, the claimant bears the burden of proving that she "sustained an injury during the course of [her] employment and that [s]he is disabled as a result of that injury." *Morrison v. Workers' Compensation Appeal Board (Rothman Institute)*, 15 A.3d 93, 98 (Pa. Cmwlth. 2010). "For purposes of workers' compensation benefits, the term disability is synonymous with loss of earning power." *Id.* A claimant suffering an alleged mental injury caused by a mental stimulus bears the burden of proving that she suffered a mental injury directly caused by abnormal work conditions. *Payes v. Workers' Compensation Appeal Board (Pennsylvania State Police)*, 79 A.3d 543, 551–552 (Pa. 2013).

Here, the Board concluded that the WCJ's determination that Claimant did not sustain a compensable mental injury was supported by substantial evidence. Claimant argues that she produced credible and competent evidence proving that her psychological stress was caused by abnormal working conditions. Upon review of the record, we would discern no error in the WCJ's reasoning. To the extent Claimant's testimony contradicted Mr. French's or Ms. McClellan's testimony, the WCJ rejected Claimant's testimony and made clear findings in his decision. Additionally, the WCJ did not find Dr. Cattoi's testimony to be competent to support that Claimant suffered from a mental injury because Dr. Cattoi did not have any specific history of the alleged incidents and only relied on Claimant's subjective perception of the events. (FOF No. 67.) According to the WCJ, Dr. Cattoi clearly relayed that to the extent that Claimant is disabled from performing her job duties, her disability was based on her fibromyalgia condition. (FOF No. 67.) Furthermore, Dr. Cattoi began seeing Claimant as a patient in 2017 and could not render any opinions as to Claimant's condition prior to then, which was when the alleged work injury occurred. (FOF No. 59.)

Because the medical evidence presented by Claimant to support her contention that the alleged work incidents caused her mental injuries was rejected by the WCJ in its entirety, and substantial evidence supports a finding that Claimant did not suffer a disability as a result of the work incidents, we would conclude that Claimant did not meet her burden of proving that she sustained a compensable work-related mental injury.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Felicia Gonzalez,                                  :
                     Petitioner           :
                                    :
        v.                                         :
                                    :
Department of Military and              :     No.  955 CD 2021
Veterans Affairs (Workers'              :
Compensation Appeal Board),           :
                    Respondent          :

## *ORDER*

AND NOW, this 18th day of May, 2023, the July 26, 2021 Order of the Workers' Compensation Appeal Board hereby is AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge