IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Leroy Mason,                                        :
                          Petitioner                :
                                                    :   No.  655 C.D. 2018
              v.                                     :
                                                    :   Submitted:  December 21, 2018
Workers' Compensation Appeal Board                  :
(Philadelphia AFL-CIO Hospital                      :
Association and Rodriguez),                          :
                          Respondents                :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                FILED:  February 13, 2019


        Leroy Mason (Claimant) petitions for review from the April 12, 2018 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) to the extent the WCJ granted Claimant's petitions for review of a utilization review determination (UR review petition), and reversed the WCJ insofar as the WCJ granted Claimant's penalty petition.[1]  Claimant contends that the Board erred in determining that the record lacked

---

[1] Philadelphia AFL-CIO Hospital Association (Employer) did not file an appeal to this Court challenging the aspect of the Board's decision that affirmed the WCJ's grant of Claimant's UR review petitions.  Generally speaking, the disposition of these petitions are of minimal relevance to the issue that Claimant raises on appeal.  As such, the Court will discuss the UR review petitions in a relatively brief manner and with the purpose of providing a contextual background of the overall nature of this dispute.

substantial evidence to support the WCJ's finding that unpaid medical expenses were causally related to the accepted work injury and that Employer engaged in an unreasonable contest.

On March 11, 2009, Claimant was discarding medical records into a dumpster when he twisted his lower back. Employer issued a Notice of Compensation Payable (NCP) on March 26, 2009, accepting liability for a lower back strain. Following his initial treatment with Employer's panel of medical providers, Claimant began treatment with George Rodriguez, M.D., and Daisy Rodriguez, M.D. (Providers), in 2009 because he felt that the panel providers were not rendering beneficial treatment. (WCJ's Finding of Fact (F.F.) Nos. 1, 14; Reproduced Record (R.R.) at 56a-57a.)

On October 7, 2015, and October 8, 2015, Claimant and Providers filed UR review petitions, requesting that a WCJ rule upon the reasonableness and necessity of the treatments administered by Providers.[2] By way of background, Employer filed several requests for utilization review, contesting the procedures and treatments of Providers during the time frame from August 16, 2011, and ongoing, and from June 26, 2015, and ongoing. The reviewers issued determinations regarding the number of monthly office visits and also with respect to treatments such as topical formulated pain creams, physical capabilities evaluations, therapeutic exercise, trigger point injections,

---

[2] The utilization review process is the exclusive way to challenge medical bills. Upon receipt of a request for utilization review, a reviewer makes the determination on the merits whether the treatment under review is reasonable or necessary. If the health care provider, employer, claimant, or insurer disagrees with the reviewer's determination, that person or entity may seek review by a WCJ, and the hearing before the WCJ is a *de novo* proceeding. *County of Allegheny v. Workers' Compensation Appeal Board (Geisler)*, 875 A.2d 1222, 1226-27 (Pa. Cmwlth. 2005).

However, a reviewer may not decide the causal relationship between the treatment under review and the claimant's work-related injury. Instead, such a challenge must be addressed to and decided by a WCJ in the first instance. *Id.* at 1226 n.10.

2

acuncture, chiropractic treatment, pain medications, and other forms of physiatric treatment. In the UR review petitions, Claimant and Providers sought review of additional procedures and treatment including, but not limited to, moxibustion, gua sha, cupping and strapping, cold laser treatment, and neuromuscular facilitation. (F.F Nos. 4-8, 12-13, 15; *see* Board's decision at 1-3, 9-11.)

In addition to filing the UR review petitions, Claimant filed a penalty petition on March 29, 2016, alleging that Employer illegally and unilaterally failed to pay medical bills that were not subject to any utilization review. Employer denied the material allegations of the petitions, and the WCJ convened a hearing. (F.F. Nos. 10-11; R.R. at 1a-7a.)

At the hearing, Claimant testified credibly that he suffers from chronic lower back pain and started to feel better when placed under the care of Providers. In a medical report authored in connection with a July 7, 2015 evaluation, Dr. George Rodriguez indicated that Claimant continues to experience constant and severe pain in his lower back and that he complains of severe sternoclavicular joint area pain and paresthesias of the right lower extremity. (F.F. Nos. 14, 25; R.R. at 58a.)

Based on the July 7, 2015 report of Dr. George Rodriguez, the WCJ found that the relevant diagnoses for utilization review were, *inter alia*, lumbosacral strain/sprain, lumbosacral radiculopathy, and lumbar HNP (herniated nucleus pulposus). In his report, Dr. George Rodriguez determined that these conditions were "secondary" to Claimant's work injury,[3] noting that the diagnosis of lumbosacral radiculopathy was made based on the results of an MRI dated December 15, 2009, and that the diagnosis of lumbar HNP was made based on the results of an EMG and NCS (nerve conduction) study dated March 11, 2010. Dr. George Rodriguez included the

---

[3] In the medical sense, the term "secondary" means "dependent or consequent on another disease or condition." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2050 (1986).

3

diagnosis codes for these diagnoses as follows: lumbosacral sprain/strain (846.0); lumbosacral radiculopathy (724.4); and lumbar HNP (722.10). (F.F. Nos. 2-3, 14-15; Board's decision at 10-11; R.R. at 59a-60a.)

Claimant and Providers also submitted a summarized list of medical bills that remained unpaid by Employer, which are marked as Items C, D, F, G, H, I, J, K, and L on exhibit H-3. With the exception of Items J, K, and L, which reflect treatment provided by Patrick Murphy, D.O., Providers rendered the treatments referenced in the remaining Items. Claimant also introduced approximately 100 pages of supporting medical documents, known as HCFA billing statements. These documents show what procedures were performed, contain diagnosis pointers for each procedure in alphabetical format, and then correlate the pointers/procedure to the pertinent diagnoses. For example, over 90% of the procedures were marked with pointers A, B, and oftentimes C, and were coded diagnostically as 722.10 (A—lumbar HNP), 846.0 (B—lumbosacral sprain/strain); 724.4 (C—lumbosacral radiculopathy). A very few of the procedures also contained an additional pointer of D, which was marked diagnostically with a code of 781.2 (gait abnormality). In his report, Dr. Rodriguez explained that gait abnormality is a condition that was "secondary" to Claimant's work injury and back pain, noting that this diagnosis was made after a consultation and an office visit with another doctor. (F.F. No. 16; R.R. at 60a, 63a-170a.)

During the hearing, Employer stipulated that its insurance carrier received the medical bills at issue. Employer did not provide evidence that it paid these bills or otherwise advance a defense that would excuse payment. Employer did not adduce evidence to demonstrate that the medical bills or diagnoses were not causally related to Claimant's accepted work injury and did not submit a brief during the briefing schedule set forth by the WCJ. (F.F. Nos. 11, 29.)

4

Concerning the UR review petitions, the WCJ reviewed the matter in a *de novo* capacity and rejected the opinions of the reviewers where inconsistent with the testimony and reports of Claimant and Providers. Ultimately, the WCJ found that all of the procedures and treatments rendered by Providers were reasonable and necessary, and she granted Claimant's UR review petitions. (F.F. Nos. 19-26; WCJ's Conclusion of Law (COL) No. 8.)

Regarding the penalty petition, the WCJ, in a decision dated March 17, 2017, found that all of the treatment and procedures reflected in the unpaid medical bills were causally related to the accepted work injury. The WCJ based this determination on the diagnoses codes on the HCFA billing statements and the opinion of Dr. George Rodriguez that the diagnoses of lumbosacral sprain/strain, lumbosacral radiculopathy, lumbar HNP, and gait abnormality were connected to Claimant's work injury. The WCJ found that Employer did not file a utilization review request with respect to the treatment and bills provided by Dr. Murphy. The WCJ further found that all of the treatment and bills provided by Providers were rendered before any utilization review effective dates; therefore, these treatments were presumptively reasonable and necessary and, in any event, were not shown to be unrelated to the work injury. The WCJ additionally found that Employer, having failed to brief, argue, or submit evidence in opposition, did not mount a contest to Claimant's penalty petition. (F.F. Nos. 3, 15, 26-29.)

Accordingly, the WCJ concluded that Claimant met his burden of proof in the penalty petition and that Employer failed to establish that no violation of the Workers' Compensation Act (Act)[4] had occurred. For relief, the WCJ ordered Employer to pay the medical bills, with 10% interest, and awarded a penalty of 50% of

---

[4] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§1-1041.4, 2501-2708.

5

the total amount of the bills owed. The WCJ also directed Employer, as a result of its unreasonable contest, to pay counsel fees of 20% of the outstanding medical bills, which the WCJ ordered to be chargeable for the period of time occurring between the filing and resolution of the instant petitions. (COL Nos. 9-12; WCJ's Order.)

Employer appealed to the Board. With respect to Claimant's UR review petitions, the Board affirmed the WCJ's grant of those petitions. *See supra* note 1. The Board, however, reversed the WCJ to the extent that she granted Claimant's penalty petition. The Board reasoned, in pertinent part, as follows:

> [T]he WCJ's finding that all of the subject medical expenses are causally related is not based on substantial evidence. Because an [e]mployer is subject to penalties for unpaid medical expenses if a WCJ determines the treatment is work-related, the causal relationship between the injury and treatment was at issue in the [p]enalty [p]etition. In the present matter, the accepted injury is a lumbar strain/sprain. The WCJ accepted Dr. Rodriguez's report stating Claimant is being treated for a herniated lumbar disc, lumbosacral sprain/strain, lumbosacral radiculopathy, [and] gait abnormality[.] She then found that all of the subject medical expenses [were] causally related to the accepted lumbar strain because each of the HCFA forms placed in evidence includes the diagnosis code identified by Dr. Rodriguez as the diagnosis code for a lumbosacral sprain/strain.
>
> . . . The WCJ did not make a finding expanding the description of injury to include all of the conditions being treated. She found that all of the treatment was causally related to the accepted injury. We cannot agree that in a case such as this, where [Claimant] is being treated with numerous modalities for multiple diagnoses and each HCFA form bears multiple diagnosis codes, a reasonable person would accept the presence of the codes for the accepted injury as adequate to support the conclusion that all of the treatment is causally related to the 2009 lumbar strain/sprain. We therefore reverse the grant of the [p]enalty [p]etition.

(Board's decision at 18.)

6

Because the Board determined that Claimant did not prevail on the penalty petition, the Board reversed the WCJ's imposition of counsel fees for an unreasonable contest. *Id.* at 19.

Claimant now appeals to this Court.[5] He contends that the Board essentially substituted its judgment for that of the WCJ and, in so doing, usurped the WCJ's role as fact-finder. Claimant points out that all of the medical bills contain the diagnostic code for lumbar strain/sprain and notes the apparently related diagnoses of lumbosacral strain/sprain, lumbosacral radiculopathy, lumbar HNP, and gait abnormality. For these reasons, Claimant submits that the WCJ properly weighed the evidence and determined that the treatments and procedures listed in the HCFA billing statements were directly related to the accepted work injury.[6]

It is a fundamental tenet of workers' compensation law that the WCJ, as fact-finder, has complete authority over questions of witness credibility and evidentiary weight, and neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations. *Sell v. Workers' Compensation Appeal Board (LNP Engineering)*, 771 A.2d 1246, 1250-51 (Pa. 2001); *Williams v. Workers' Compensation Appeal Board (USX Corp.-Fairless Works)*, 862 A.2d 137, 143 (Pa. Cmwlth. 2004). In ascertaining whether the record contains substantial evidence to support a WCJ's finding of fact, we view the evidence in the light most favorable to the party who prevailed before the WCJ, and give that party the benefit of all inferences that can be

---

[5] Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether findings of fact are supported by substantial evidence. *Anderson v. Workers' Compensation Appeal Board (Penn Center for Rehab)*, 15 A.3d 944, 947 n.1 (Pa. Cmwlth. 2010).

[6] By *per curiam* order dated November 1, 2018, this Court, *inter alia*, precluded Employer from filing a brief in this matter due to Employer's failure to comply with our October 10, 2018 order directing it to file a brief within 14 days.

7

reasonably drawn from the evidence. *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003).

In *CVA, Inc. v. Workers' Compensation Appeal Board (Riley)*, 29 A.3d 1224 (Pa. Cmwlth. 2011), this Court set forth the pertinent law with respect to a penalty petition alleging that an employer failed to timely pay medical bills as follows:

> In a penalty petition proceeding, the claimant has the burden of proving that a violation of the Act occurred. An employer is obligated to pay for reasonable medical expenses that are causally related to the work injury. Under Section 306(f.1)(5) of the Act, 77 P.S. §531(5), the employer must pay the claimant's medical bills within 30 days of receiving them, unless the employer disputes the reasonableness and necessity of the treatment. If the employer believes that the treatment is not reasonable and necessary, it must submit the bills for a utilization review or face the possibility of a penalty. In addition, if the employer refuses to pay bills because it believes they are not causally related to the work injury, the employer runs the risk of being assessed a penalty if the WCJ determines that they are, in fact, causally related.[7]

*Id.* at 1227 (internal citations omitted); *see Listino v. Workmen's Compensation Appeal Board (INA Life Insurance Company)*, 659 A.2d 45, 48 (Pa. Cmwlth. 1995).

In *DeJesus v. Workmen's Compensation Appeal Board (Friends Hospital)*, 623 A.2d 397 (Pa. Cmwlth. 1993), the referee[8] found that the claimant sustained a work-related injury in the form of a herniated disc at L4-L5 and a lumbar pathology at L5-S1. The employer argued that the referee properly excluded physical therapy at Riverside Medical Center as a payable medical expense because the

---

[7] As stated in *CVA*, rather than run the risk of chance, if an employer believes that treatments are not related to a claimant's accepted work-related injury, the employer has a remedy in that it can file a petition to review the medical treatment. *Id.* at 1229.

[8] The office of referee was changed to the office of WCJ by the Act of July 2, 1993, P.L. 190, as set forth in section 401 of the Act of June 15, 1915, P.L. 736, *as amended*, 77 P.S. §701.

treatment was unrelated to the claimant's accepted work injury. Ultimately, we remanded the case to the referee for additional fact-finding. In doing so, this Court noted that we "carefully reviewed the record, especially the medical bills from Riverside. These bills state [the claimant's] diagnosis generally as 'back injury,' or 'sciatica.' . . . Without more information, these diagnoses would appear to relate to [the claimant's] work-related injury." *Id.* at 399.

In *CVA*, this Court upheld the WCJ's determination that the employer violated the Act by unilaterally refusing to pay the claimant's medical bills. In that case, the employer accepted liability for a left knee injury and denied payment for Therapeutic Magnetic Resonance (TMR) treatments because it determined that the treatments were not causally related to the accepted work injury. We stated that the claimant was not obligated to produce medical testimony to establish a causal relationship between the injury and medical treatment, and that a WCJ could rely upon medical reports and the HCFA billing statements in making such a determination. In summarily rejecting the employer's argument that the TMR treatments were not directly related to the claimant's work injury, we concluded that the claimant "injured his left knee and the TMR treatment was for the left knee injury. Thus, a causal relationship was established." *CVA*, 29 A.3d at 1228.

In *The Body Shop v. Workers' Compensation Appeal Board (Schanz)*, 720 A.2d 795 (Pa. Cmwlth. 1998), the claimant received benefits pursuant to an NCP that indicated he suffered from an acute low back strain. The claimant underwent cervical and lumbar disc surgeries, and the employer refused to pay for the surgeries as well as other related costs. The claimant petitioned to review medical treatment and/or billing and also petitioned for penalties. In pertinent part, the WCJ determined that the claimant had sustained a work-related injury to his lower back and that the lumbar

9

surgery was causally related to the work injury and the diagnosis of a herniated disc. The WCJ further determined that the employer did not meet its burden of proving that the medical expenses incurred by the claimant regarding his lower back were not directly related to his work injury and assessed a penalty against the employer. On appeal, the Board affirmed.

The employer then petitioned for review with this Court. The employer argued that the claimant was not entitled to medical benefits for any injury other than the low back strain that was accepted in the NCP, and that the claimant failed to provide proper notice that he had suffered a herniated disc. This Court affirmed the imposition of penalties, and we provided the following reasoning:

> Although [the claimant] notified the [employer] that he suffered from an acute low back strain, and the [NCP] indicated the same, notice under . . . the Act . . . does not require that a claimant give an employer an exact diagnosis, but only a reasonably precise description of the injury.
>
> In this case, when [the claimant] initially was injured and examined, he was diagnosed with an acute low back strain. However, after having continued pain and further diagnostic studies were performed [sic], the diagnosis—not the injury—changed to a herniated disc. Because the diagnosis of a herniated disc does not constitute a separate injury but is just another diagnosis of the initial injury [the claimant's] original notice to [the employer] sufficiently alerted it of the work-related injury to his back and gave it an opportunity to investigate the reasonableness and necessity of [the claimant's] medical bills.

*The Body Shop*, 720 A.2d at 799 (internal citations omitted).[9]

---

[9] *See also Haslam v. Workers' Compensation Appeal Board (London Grove Communication)*, 169 A.3d 704, 710-11 (Pa. Cmwlth. 2017) ("In this case, [e]mployer accepted responsibility for treatment for [c]laimant's fractured feet. Thereafter, [c]laimant sought treatment for pain in those feet. There exists an obvious connection between the injury and the pain. For [e]mployer to avoid

In *Mohawk Industries, Inc. v. Workers' Compensation Appeal Board (Weyant)* (Pa. Cmwlth., No. 197 C.D. 2013, filed September 18, 2013) (unreported),[10] the claimant sustained an injury after he fell to the ground, and the employer filed a Notice of Compensation Denial (NCD) accepting "upper back and neck pain" as a work-related injury for medical purposes only. *Id.*, slip op. at 2. Thereafter, the claimant, *inter alia*, filed a penalty petition, alleging that the employer violated the Act by failing to timely pay for medical treatment of his work injury as accepted through the NCD. During the hearing, the claimant presented the testimony of a medical doctor who stated that, as a result of his fall at work, the claimant's preexisting spinal stenosis, degenerative disc disease, and bone spurs were aggravated and that the claimant developed a disc herniation. The medical doctor also opined that the claimant's work-related injury necessitated surgical procedures, namely an anterior cervical discectomy fusion and plating. The WCJ accepted this testimony as credible and imposed penalties on the employer.

---

responsibility for the medical expenses resulting from treatment of the pain in [c]laimant's feet, [e]mployer must prove that the treatment is for an injury that is distinct from the acknowledged injury."); *Kurtz v. Workers' Compensation Appeal Board (Waynesburg College)*, 794 A.2d 443, 448 (Pa. Cmwlth. 2002) ("Claimant's head injury was acknowledged by [e]mployer through the NCP, [] any natural and probable symptoms arising from [c]laimant's compensable head injury are presumed to be related to that injury and it is Employer's burden to establish otherwise. Claimant complained of dizziness and headaches and a burning sensation that were in the same area as his original head pain; just two inches from the scar left by his surgery . . . . It is difficult to imagine that similar pain appearing in such close proximity to the area of the original injury is not a natural and probable result of the original injury and, therefore, obviously related to such injury . . . . We, therefore, hold that [c]laimant's new symptoms obviously appear to be related to the original injury and it was [e]mployer's burden, under these facts, to establish that the symptoms are indeed unrelated to the original compensable injury.").

[10]*Mohawk Industries*, an unpublished opinion, is cited for its persuasive value in accordance with section 414(a) of the Commonwealth Court's Internal Operating Procedures. 210 Pa. Code §69.414(a).

On appeal to the Board, the employer argued that the penalties were improper because it never accepted liability for the claimant's particular diagnosed injuries. Citing *The Body Shop*, the Board held that when an injury is recognized by an employer and further medical attention reveals an additional diagnosis to the same part of the body, the employer bears the burden of proving that the new diagnosis is not work-related. Having determined that the WCJ did not err in finding that the diagnoses and surgery were causally related to the claimant's work injury, the Board concluded that the employer was properly subjected to penalties for refusing to pay the medical expenses associated with the surgery.

On further appeal to this Court, the employer renewed its argument that by issuing the NCD, it only accepted liability for medical expenses for upper back and neck pain and treatment resulting from the claimant's fall. This Court in *Mohawk Industries* found no merit in this contention, and we determined that the WCJ correctly imposed penalties on the employer:

> Here, [the employer] unilaterally refused to pay for [the claimant's] surgery solely on the belief that it was not causally related to [the claimant's] injury and thereby assumed the risk that the WCJ would later find otherwise. Because the cervical disc herniation and aggravation of [the claimant's] pre-existing spinal stenosis, degenerative disc disease, and bone spurs were caused by [the claimant's] work-related neck and back injury, which [the employer] acknowledged through the NCD, [the employer] violated [the Act] by refusing to timely pay for the treatment of these conditions[.]

*Id.*, slip op. at 7-8 (internal citations omitted).

In *St. Joseph's Center v. Workers' Compensation Appeal Board (Williams)* (Pa. Cmwlth., No. 2062 C.D. 2010, filed August 23, 2011) (unreported), the employer issued an NCP and supplemental agreement accepting liability, *inter alia*, for

a left rotator cuff sprain and refused to pay bills for surgical and medical treatment. At the hearing, the claimant's medical expert testified credibly that the claimant's rotator cuff sprain "resulted in a partial tear of the rotator cuff as well as subacromial inflammation or impingement, for which [] surgery and subsequent treatment was necessary." *Id.*, slip op. at 30. The WCJ found that the surgery and related expenses were causally related to the claimant's accepted work-related injury. On appeal to this Court, the employer argued that "it did not violate the Act when it did not pay for [the claimant's] rotator cuff surgery because it was treatment for a non-acknowledged injury," and that "the WCJ improperly expanded [the claimant's] injury into a surgically treatable condition." *Id.* Relying on *The Body Shop*, we rejected these contentions and concluded that the employer violated the Act because the claimant's "injury did not change but, rather, the diagnosis of that injury changed after [the claimant] obtained a second opinion" from another doctor. *Id.*

Upon review of this case law, we conclude that the Board erred as a matter of law in reversing the WCJ's order inasmuch as the WCJ ordered Employer to pay penalties. Here, through the NCP, Employer accepted liability for a lower back strain. Notably, there is no dispute regarding whether the particular treatments provided by the Providers, as listed in the HCFA billing statements, were reasonable and necessary to the diagnoses rendered by Dr. George Rodriguez. The evidence demonstrates, instead, that the procedures were administered to treat and remedy Claimant's back injury and, as such, indicates that there is a causal relationship between the treatments and work-related injury. *See* R.R. at 61a-170a; *CVA*, 29 A.3d at 1228 ("Employer purports to object to the TMR treatment as not related to [c]laimant's work injury. However, [c]laimant injured his left knee and the TMR treatment was for the left knee injury. Thus, a causal relationship was established.").

13

Moreover, based on the report of Dr. George Rodriguez, the WCJ could reasonably find that Dr. George Rodriguez, after conducting further testing, rendered substituted, alternative, or overlapping diagnoses of lumbosacral strain/sprain, lumbosacral radiculopathy, and lumbar HNP. From the face of the report, the WCJ could infer that these conditions were "secondary" to, dependent upon, or, in other words, directly related to or stemming from the injury accepted in the NCP. *See The Body Shop*, 720 A.2d at 799 ("[A]fter having continued pain and further diagnostic studies were performed [sic], the diagnosis—not the injury—changed to a herniated disc."). Further, aside from the fact that an obvious connection exists between the designation of a lower back strain injury in the NCP and the diagnosis of lumbosacral strain/sprain, the above inference is further buttressed by the fact that the diagnoses of lumbosacral strain/sprain, lumbosacral radiculopathy, and lumbar HNP all pertain to the lower back region where the work-related injury occurred. *See DeJesus*, 623 A.2d at 399 (concluding that where the work-related injury was a herniated disc and lumbar pathology, the diagnoses of back injury and sciatica "appear to relate to [the claimant's] work related injury"). Finally, in an overwhelming vast majority of the HCFA billing statements, the listed diagnostic pointers reference the codes for all three of these conditions/diagnoses, lumping them together in a manner that strongly suggests that they are diagnoses for the same, singular injury; that is, Claimant's work-related injury as acknowledged in the NCP.

Reviewing the evidence in the light most favorable to Claimant, as we must, we conclude that the WCJ had an adequate evidentiary basis upon which she could infer that the diagnoses stated in the report and HCFA billing statements were causally related to Claimant's work-related injury. On comparison, this case bears remarkable resemblance to *The Body Shop*, where low back strain was the injury

14

accepted in the NCP and the diagnosis was changed to a herniated disc that required surgical intervention, and *Mohawk Industries,* where the NCD accepted payment of medical expenses for upper back and neck pain and the diagnoses were changed to a disc herniation and aggravation of preexisting spinal stenosis, degenerative disc disease, and bone spurs. In both *The Body Shop* and *Mohawk Industries*, this Court determined that the diagnoses did not constitute a separate injury but, rather, were simply different or other diagnoses of the initial injury. And, as this Court stated in *St. Joseph's Center*, in such a situation, a claimant need not seek to amend or expand the NCP to include additional injuries, and the Board's conclusion to the contrary was in error. Ultimately, our case law refutes the Board's analysis and establishes that the Board, in essence, engaged in its own form of fact-finding, by reweighing and downplaying the proof submitted by Claimant and Providers to determine that it did not meet the standard of substantial evidence.

Therefore, because the evidence demonstrated that Employer unilaterally refused to pay medical expenses for a work-related injury, we conclude that the WCJ's imposition of penalties for a violation of the Act was proper, as well as its award of attorney's fees due to Employer's unreasonable contest. *See The Body Shop*, 720 A.2d at 799 (concluding that because "an employer's unilateral refusal to pay medical expenses for a work-related injury without filing a review petition is a violation of . . . the Act . . . the imposition of a [] penalty was proper," and holding that "because [the employer's] refusal to pay [the claimant's] medical bills was a violation of the Act, there could be no reasonable contest and the award of counsel fees was also proper").

15

Accordingly, we reverse the Board's order to the extent the Board reversed the WCJ's order granting the penalty petition filed by Claimant.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Leroy Mason,                             :
                    Petitioner           :
                                         :   No.  655 C.D. 2018
          v.                             :
                                         :
Workers' Compensation Appeal Board       :
(Philadelphia AFL-CIO Hospital           :
Association and Rodriguez),              :
                    Respondents          :

## ***ORDER***

AND NOW, this 13th day of February, 2019, the April 12, 2018 order of the Workers' Compensation Appeal Board (Board) is reversed insofar as the Board reversed the March 17, 2017 decision of the workers' compensation judge granting the penalty petition filed by Leroy Mason.  The matter is remanded to the Board for further proceedings consistent with this opinion.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge