# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

G.O. Carlson, Inc.,                          :
                        Petitioner            :
                                              :
            v.                                :  No. 1068 C.D. 2018
                                              :  Submitted: November 16, 2018
Workers' Compensation Appeal                  :
Board (Trauterman),                           :
                        Respondent            :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
**JUDGE COHN JUBELIRER**                      **FILED: March 12, 2019**

G.O. Carlson, Inc. (Employer) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) affirming the decision of a Workers' Compensation Judge (WCJ) that granted the Petition for Penalties (Penalty Petition) filed by Charles Trauterman (Claimant).  The WCJ concluded Employer violated the Workers' Compensation Act[1] (Act) by denying payment for medical treatment, including a proposed lumbar fusion surgery, which the WCJ found to be causally related to Claimant's work injury.  On appeal, Employer argues the Board erred because:  the proposed surgery was not causally related to Claimant's accepted work injury; Employer had good reason for not preauthorizing the surgery; and the WCJ and Board did not consider that Employer ultimately did, in good faith, preauthorize

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

the surgery in December 2015, subject to its right to file a utilization review (UR). Discerning no error or abuse of discretion, we affirm.

Claimant, a steel worker, sustained a work-related injury on January 12, 2009. Employer issued a Notice of Compensation Payable (NCP), describing the injury as a lumbar strain and accepting liability therefor. Claimant returned to light-duty work on January 22, 2009, and eventually returned to full duty. On July 20, 2015, Claimant filed the Penalty Petition asserting that Employer violated Section 306(f.1)(1) of the Act, 77 P.S. § 531(1), by refusing to preauthorize a lumbar fusion surgery recommended by Claimant's treating physician without Employer having received a supersedeas or "properly challenging the reasonableness and necessity of the surgery." (WCJ Decision, Finding of Fact (FOF) ¶ 2.) In its answer, Employer denied the Penalty Petition's material allegations. The Penalty Petition was assigned to the WCJ, who held hearings at one of which Claimant testified.

Claimant testified regarding the treatment for his back injury with James Macielak, M.D., beginning in August 2009. After years of treatment, Dr. Macielak suggested that Claimant undergo a L4, L5-S1 fusion, which was scheduled for June 3, 2015. Claimant explained the surgery did not happen because an adjuster from Employer's insurer (Adjuster) advised him that Employer "wouldn't cover anything until [Claimant] had a second opinion." (Reproduced Record (R.R.) at 30a.) At Employer's direction, Claimant went to Jon Levy, M.D., a board-certified orthopedic surgeon, for an Independent Medical Examination (IME) on June 10, 2015. Following Dr. Levy's IME, Claimant still did not undergo the surgery, but he hoped he would be able to have it soon. Claimant acknowledged that Dr. Levy did not think the surgery was reasonable or necessary because Claimant was overweight

2

and smoked. Claimant has tried to stop smoking, but has been unsuccessful. He continued to treat with Dr. Macielak.

Dr. Levy's deposition and IME Report were submitted as evidence. In the IME Report, Dr. Levy explained that Claimant complained of low back pain with radicular symptoms in both lower extremities, which have been consistent since January 12, 2009. Dr. Levy observed there was no evidence that Claimant was magnifying his symptoms, and Claimant's complaints of pain were consistent with the objective findings. He stated Claimant was not "fully recovered," "ha[d] ongoing degenerative [disc] disease, ongoing lumbar radicular symptoms," and the "preexistent degenerative disease . . . was potentially aggravated by the work event and has left him with residual lumbar radiculopathy." (*Id.* at 76a.) Dr. Levy "believe[d] that [Claimant's] current condition [wa]s directly and causally related to the work event of January 12, 2009" and did "not believe there [were] any non-work[-]related findings which contributed to [that] current situation." (*Id.* at 76a-77a.) According to Dr. Levy, the proposed surgery was not reasonable due to Claimant being a heavy smoker and complaining more of axial (back) pain than radicular pain. Dr. Levy believed that Claimant's heavy smoking made the surgery more likely to fail, making it an option of last resort, and that the surgery likely would not be successful in resolving Claimant's back pain.

Similar to the IME Report, Dr. Levy testified Claimant complained of "low back pain, bilateral lower extremity discomfort, numbness in his left foot on an intermittent basis, right leg pain radiating to his knee." (*Id.* at 47a.) Dr. Levy's review of Claimant's x-rays taken shortly after the work injury revealed that Claimant had mild degenerative changes at L4-L5 that preexisted the work injury. Following his examination of Claimant and review of Claimant's medical records

3

and diagnostic studies, Dr. Levy diagnosed Claimant with lumbar degenerative disc disease, which preexisted the work injury but was potentially aggravated by the work injury, lumbar strain, and lumbar radiculopathy. Dr. Levy indicated he was not aware that the lumbar radiculopathy existed prior to the work injury, and acknowledged that some lumbar strains never fully recover. (*Id.* at 53a-54a.) Dr. Levy agreed that Claimant was not fully recovered from the work injury, and Claimant's current condition was "directly and causally related to the work event of January 12, 2009." (*Id.* at 57a.)

On the issue of the proposed surgery, Dr. Levy recounted Claimant's history of heavy smoking, which was a contraindication for lumbar fusion surgery because smokers do worse with surgical intervention. He indicated that smokers have a higher incidence of back pain and that smoking accelerates degenerative conditions, such as degenerative disc disease. Considering that a lumbar strain is a soft tissue injury, Dr. Levy opined that a lumbar fusion is not a treatment for soft tissue injuries, so he did not believe this to be the reason for the surgery. However, Dr. Levy also indicated that while the degenerative condition played a role in the proposed surgery, it was "impossible to ascertain what percentage of [Claimant's] symptoms related to the normal aging process in a smoker, versus someone who had an injury six years prior" and "if Claimant [had] never recovered . . . in my opinion, . . . there is a causal relationship between his work event and his problem." (*Id.* at 63a-64a.) He further opined the surgery was not reasonable or necessary because surgeries are usually more successful at relieving leg pain, rather than back pain, and are less successful for smokers. Because Claimant complained more of back pain than leg pain and was a heavy smoker, Dr. Levy did not consider Claimant a good candidate for the surgery. Dr. Levy also acknowledged that Claimant had undergone a long period of

4

conservative care, smokers do sometimes have this surgery, and surgery was a potential option. (*Id.* at 58a, 61a-62a.)

The parties stipulated that Adjuster called Claimant and left a message stating, "I just wanted to let you know based on your IME, we will not be approving surgery" and that "we will not [be] approving anything based on that IME report." (*Id.* at 27a.) On December 23, 2015, Adjuster sent Dr. Macielak a fax "confirm[ing its] willingness to preauthorize the . . . surgery [he] recommended with the reservation of our right to review the bill before making payment to make certain it is reasonable and necessary." (*Id.* at 79a.) Employer's counsel acknowledged at the hearing that Employer had not filed a prospective UR petition challenging the reasonableness and necessity of the proposed surgery. (*Id.* at 36a.)

The WCJ credited Claimant's testimony, explaining that his testimony was internally consistent and consistent with the history given to Dr. Levy, and that his continued efforts to work enhanced his credibility. The WCJ further found Dr. Levy's IME Report competent and credible, and that Dr. Levy's testimony was credible to the extent it was consistent with his IME Report. Based on those credibility determinations, the WCJ found that: Claimant was not fully recovered from the work injury; "[t]he current condition of Claimant's lumbar spine is directly and causally related to the" work injury; "Employer denied payment for medical[] treatment, including the proposed surgery prior to June 3, 2015"; Employer "based this denial on Dr. Levy's report"; and Employer "did not retract this denial until December 23, 2015." (FOF ¶ 16.) The WCJ noted that "[n]either party filed a prospective [UR] request regarding the proposed surgery." (*Id.*)

The WCJ concluded that Employer had "violated the Act by denying payment for Claimant's work-related medical treatment, including but not limited to the

proposed spinal fusion, beginning as of June 3, 2015[,] and continuing through December 22, 2015." (WCJ Decision, Conclusion of Law (COL) ¶ 2.) The WCJ held that Employer's choice to challenge the proposed surgery based on causation exposed it to penalties if that surgery was found to be related to the work injury. (*Id.* (citing *Listino v. Workmen's Comp. Appeal Bd. (INA Life Ins. Co.)*, 659 A.2d 45, 48 (Pa. Cmwlth. 1995)).) Noting that Adjuster advised Claimant that Employer "would not be approving '**anything**,' including surgery, based on Dr. Levy's report," the WCJ observed that "Dr. Levy's report related the condition of Claimant's lumbar spine to the work injury." (*Id.* (emphasis added).) The WCJ concluded that Dr. Levy's objection to the surgery was not based on causation, but that it was unreasonable due to Claimant's smoking history and the nature of his complaints. Questions regarding the reasonableness and necessity of the surgery should have been resolved, the WCJ held, by Employer filing a prospective UR petition, but it did not do so. The WCJ rejected Employer's contention that it was not required to preauthorize the surgery, noting that "[A]djust[e]r's phone message went beyond a simple denial of preauthorization[, i]t referenced a denial of 'anything,' including the surgery, based on Dr. Levy's report." (*Id.*)

These circumstances, according to the WCJ, supported the award of a penalty pursuant to *McLaughlin v. Workers' Compensation Appeal Board (St. Francis Country House)*, 808 A.2d 285, 289-91 (Pa. Cmwlth. 2002). In *McLaughlin*, this Court held that the employer violated Section 306(f.1) of the Act because "[b]y refusing to authorize the scheduled surgery and indicating that it would not pay for 'any treatment' pending its petition for termination" without filing a UR petition, the employer "effectively prevented [the c]laimant from receiving the treatment recommended by his treating physician." *Id.* at 289-90. Because the treatment was

6

found to be causally related to the work injury, we upheld the award of penalties in *McLaughlin*. *Id.* at 290. Accordingly, the WCJ granted the Penalty Petition and awarded "a penalty equal to twenty percent of the Claimant's total disability rate for the period of time from June 3, 2015[,] to and including December 22, 2015."[2] (COL ¶ 3.) Employer appealed to the Board, which affirmed. It now petitions this Court for review.[3]

On appeal, Employer first argues that the WCJ erred in finding that the lumbar fusion surgery was causally related to his accepted work injury, rather than Claimant's preexisting degenerative disc disease. Employer asserts Dr. Levy opined that such surgeries are not performed to treat lumbar strains, and the surgery proposed for Claimant was to treat his degenerative condition. Moreover, Employer argues, Claimant did not file a review petition in order to expand the description of his work injury and cannot do so through a penalty petition. Because it did not deny medical treatment that was causally related to Claimant's work injury, Employer maintains it did not violate the Act and the Penalty Petition should have been denied.

Claimant responds there was no error in the WCJ's finding that the medical treatment at issue was causally related to Claimant's work injury and that, because Employer chose not to pay for the treatment based on causation, it risked being subject to penalties if the WCJ found it was wrong. *Listino*, 659 A.2d at 48. Claimant notes Employer focuses on the lack of preauthorization of the surgery, but Employer advised Claimant that it was not going to pay for "anything," including

---

[2] The WCJ found that Employer reasonably contested the Penalty Petition because the WCJ did not read *McLaughlin* as imposing a duty on employers to preauthorize medical treatment. (COL ¶ 4.) Claimant did not challenge the WCJ's conclusion.

[3] This Court's "review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law[,] or whether necessary findings of fact are supported by substantial evidence." *City of Philadelphia v. Workers' Comp. Appeal Bd. (Sherlock)*, 934 A.2d 156, 159 n.5 (Pa. Cmwlth. 2007).

the surgery, following the IME. (R.R. at 27a.) Such unilateral refusal, Claimant argues, violates the Act. Further, Claimant maintains it was not necessary for him to file a review petition because the relationship between the proposed surgery and Claimant's work injury was the central issue in the Penalty Petition proceeding, and there was no change to the work injury, only to the diagnosis of that injury. *The Body Shop v. Workers' Comp. Appeal Bd. (Schanz)*, 720 A.2d 795, 799 (Pa. Cmwlth. 1998). Pointing to Dr. Levy's credited IME Report and testimony regarding the relationship of Claimant's work injury to his current diagnoses, Claimant asserts there was substantial evidence to support the WCJ's finding. (R.R. at 57a, 76a-77a, 85a.)

Section 435(d)(i) of the Act, 77 P.S. § 991(d)(i),[4] permits the imposition of penalties where an employer violates the Act, rules, or regulations, which the claimant bears the burden of proving. *Shuster v. Workers' Comp. Appeal Bd. (Pa. Human Relations Comm'n)*, 745 A.2d 1282, 1288 (Pa. Cmwlth. 2002). If the claimant establishes a violation, the employer may offer rebuttal evidence to show that no violation occurred. *Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger)*, 38 A.3d 1037, 1047 (Pa. Cmwlth. 2011). A WCJ is not required to award penalties, even if a violation of the Act is proven, and the decision to award penalties, or not, is within the WCJ's discretion. *The Budd Co. v. Workers' Comp. Appeal Bd. (Kan)*, 858 A.2d 170, 176 (Pa. Cmwlth. 2004). We will not reverse that decision absent an abuse of discretion. *Id.*

Section 306(f.1)(1)(i) of the Act provides, in relevant part, that "[t]he employer shall provide payment in accordance with this section for reasonable surgical and medical services, services rendered by physicians or other health care

---

[4] Section 435 was added by Section 3 of the Act of February 8, 1972, P.L. 25, *as amended*.

providers, including an additional opinion when invasive surgery may be necessary, medicines and supplies, as and when needed." 77 P.S. § 531(1)(i). "Once the employer's liability for the work injury has been established, the employer may not unilaterally stop making benefit payment[s] in the absence of a final receipt, an agreement, a supersedeas[,] or any other order of the WCJ authorizing such action." *McLaughlin*, 808 A.2d at 288. "Absent such authority, . . . the employer must continue to make payment[s] while challenging the claimant's entitlement to benefits." *Id.* at 288-89. An employer that unilaterally stops paying a claimant's medical bills based solely on causation assumes the risk of exposure to penalties if a WCJ finds that the medical expenses are causally related to the work injury. *Listino*, 659 A.2d at 48. If a WCJ determines that the treatment was not causally related to the work injury, then the employer is not subject to penalties and does not have to pay for the treatment retroactively. *Kuemmerle v. Workers' Comp. Appeal Bd. (Acme Mkts., Inc.)*, 742 A.2d 229, 232 (Pa. Cmwlth. 1999).

Employer argues that it was error to find that Claimant's surgery was causally related to the work injury because the only accepted injury on the NCP was a lumbar strain, and Dr. Levy opined that the surgery was not performed for a lumbar strain, but "was only performed to correct the claimant's preexisting degenerative disease." (Employer's Brief (Br.) at 14.) Employer therefore argues that the WCJ erred by finding the surgery causally related to the accepted work injury in the context of a Penalty Petition, without having a review petition before him in order to expand the accepted work injury.

Initially, Dr. Levy's testimony was more expansive regarding the diagnoses of Claimant's work injury than set forth in Employer's brief. Dr. Levy did not limit his diagnoses to a lumbar strain. The IME Report indicates that Claimant has

9

complained of the same symptoms, "low back pain with radicular symptoms into both the lower extremities," since the work injury occurred. (R.R. at 76a.) The IME Report further reflects Dr. Levy's opinion that Claimant "ha[d] ongoing degenerative [disc] disease, [and] ongoing lumbar radicular symptoms," and that the "preexistent degenerative disease . . . was potentially aggravated by the work event and has left him with residual lumbar radiculopathy." (*Id.*) Dr. Levy reiterated these diagnoses in his testimony. He further opined, in both the IME Report and deposition, that he "believe[d] that [**Claimant's] current condition is directly and causally related to the work event of January 12, 2009**." (*Id.* at 57a, 76a-77a (emphasis added).) Although Dr. Levy indicated Claimant's degenerative condition played a role in the proposed surgery, he explained it was "impossible to ascertain what percentage of [Claimant's] symptoms related to the normal aging process in a smoker, versus someone who had an injury six years prior," and opined "if [Claimant had] never recovered . . . in my opinion, . . . there is a causal relationship between his work event and his problem." (*Id.* at 63a-64a.) Thus, Employer's characterization of Dr. Levy as testifying that the surgery "was only performed to correct the claimant's preexisting degenerative disease," (Employer's Br. at 14), is not correct.

Employer contends that the only accepted work injury was a lumbar strain as reflected on the NCP. Moreover, Dr. Levy concluded that Claimant suffered from lumbar degenerative disc disease, a lumbar strain and lumbar radiculopathy, and that the surgery is not performed to treat a lumbar strain. Employer therefore believes that finding it was responsible for the surgery requires an expansion of the work-related injury, which cannot be done in a Penalty Petition but required Claimant to file a review petition.

10

We disagree that a review petition was necessary under the circumstances in this case. The Penalty Petition that Claimant filed raised the issue of whether the treatment was related to the work injury. The facts of this case are similar to those in *The Body Shop*. There, the NCP described the injury as "an acute low back strain," and we stated that "an exact diagnosis" was not required, "but only a reasonably precise description of the injury." *The Body Shop*, 720 A.2d at 799. After the claimant's continued pain, and the performance of diagnostic studies, "the diagnosis – not the injury – changed to a herniated disc." *Id.* We held that "[b]ecause the diagnosis of a herniated disc does not constitute a separate injury but is just another diagnosis of the initial injury," the claimant's original notice was sufficient to describe the injury to the claimant's back. *Id.* We therefore upheld the determination that the employer had violated the Act when it refused to pay the medical expenses related to the herniated disc, which included surgery. *The Body Shop* relied upon *State Workmen's Insurance Fund v. Workmen's Compensation Appeal Board (Wagner)*, 677 A.2d 892 (Pa. Cmwlth. 1996), which similarly held that a diagnosis of carpal tunnel syndrome did not constitute a separate injury from the original wrist and hand injury diagnosed as DeQuervain disease, but was another diagnosis of the initial injury. *See also Mohawk Indus., Inc. v. Workers' Comp. Appeal Bd. (Weyant)* (Pa. Cmwlth., No. 197 C.D. 2013, filed Sept. 18, 2013), slip op. at 7-8 (concluding that the employer, which accepted a work injury described in the NCP as upper back and neck pain, violated the Act when, based on causation, it unilaterally refused to pay for surgical procedures related to a disc herniation, which the claimant's physician credibly opined during the penalty petition proceedings was

11

needed to treat the work-related aggravation to the claimant's preexisting conditions).[5]

The NCP here describes Claimant's work injury as a "lumbar strain," and Dr. Levy opined that a lumbar fusion surgery would not be appropriate for that injury. However, Dr. Levy also noted that Claimant "has had consistent complaints since the work event," and opined that Claimant had preexisting lumbar degenerative disc disease "which was potentially aggravated by the work event and has left him with residual lumbar radiculopathy," and that his "current condition is directly and causally related to the work event of January 12, 2009" (the work injury). (R.R. at 57a, 76a.) These conditions all relate to Claimant's lumbar spine, the area that Employer agreed that Claimant had injured at work. This is similar to *The Body Shop*, where an initial diagnosis of acute low back strain was clarified to include a herniated disc, and *Wagner*, where carpal tunnel was a later diagnosis of the wrist and hand injury. Here, Claimant's work injury to his lumbar spine remained the same, while the diagnoses more specifically includes aggravation of preexistent degenerative disease, and residual lumbar radiculopathy, in addition to a lumbar strain. The WCJ, acting in his exclusive role as fact finder, *Sell v. Workers' Compensation Appeal Board (LNP Engineering)*, 771 A.2d 1246, 1250-51 (Pa. 2001), credited Dr. Levy's IME Report and testimony. That evidence supports the WCJ's finding that Claimant's current lumbar condition, which the surgery is intended to treat, is directly and causally related to Claimant's January 12, 2009 accepted work injury.

Importantly, the WCJ did not limit his finding of a violation of the Act to the refusal to preauthorize the surgery, but found that Employer denied payment for

---

[5] *Mohawk Industries* is cited for its persuasive value in accordance with Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

12

work-related medical treatment generally based on the IME Report. This finding is supported by Adjuster's statement that Employer would not be paying for the proposed surgery or "anything" based on the IME Report. (R.R. at 27a.)

Because the WCJ's finding that Employer refused to pay for medical treatment that was causally related to Claimant's January 12, 2009 accepted work injury is supported by substantial evidence[6] and there is no dispute that Employer acted unilaterally, Claimant established that Employer violated Section 306(f.1)(1)(i) of the Act. As reflected by its arguments to this Court, Employer's refusal to pay was based on its belief that the surgery was not causally related to Claimant's accepted work injury, a lumbar strain. However, an employer that unilaterally chooses not to pay for a medical treatment on this basis assumes the risk of being assessed a penalty if it was wrong. *Listino*, 659 A.2d at 48. In deciding not to preauthorize the surgery or pay for "anything" based on the IME Report without the benefit of a WCJ Order, supersedeas, final receipt, or agreement, Employer assumed the risk here and lost.

Employer next asserts no penalties should have been awarded because it "had a strong basis to initially deny preauthorization of the surgery in question" where the accepted injury was a lumbar strain and the suggested surgery "clearly would not have been causally related to a lumber s[t]rain." (Employer's Br. at 15-16.) Claimant responds that the WCJ's finding of liability for penalties was based not only on the refusal to preauthorize the surgery, but also on Employer's unilateral refusal to pay for "anything," a position Employer did not change until late December 2015. Claimant points out that Dr. Levy related Claimant's current

---

[6] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *City of Philadelphia v. Workers' Comp. Appeal Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011).

condition to the work injury and, although he questioned the reasonableness and necessity of the surgery, Employer did not request a prospective UR of that treatment. Under these facts, Claimant asserts, the WCJ properly awarded penalties.

The award of penalties for violations of the Act is within the sound discretion of the WCJ and will not be overturned unless there is an abuse of discretion. *The Budd Co.*, 858 A.2d at 176. "An abuse of discretion occurs where the WCJ's judgment is manifestly unreasonable, where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Allegis Grp. v. Workers' Comp. Appeal Bd. (Coughenaur)*, 7 A.3d 325, 327 n.3 (Pa. Cmwlth. 2010).

Employer's argument essentially asks this Court to intrude upon the WCJ's discretionary award of penalties because it "had a strong basis" not to preauthorize a surgery that was "clearly" not related to Claimant's lumbar strain. (Employer's Br. at 15-16.) However, no matter how strongly Employer believed the surgery was not causally related to Claimant's work injury, the denial of preauthorization "effectively prevented Claimant from receiving the treatment recommended by his treating physician." *McLaughlin*, 808 A.2d at 289. Moreover, to the extent Employer relies on Dr. Levy's testimony that a fusion surgery would not be used to treat a soft tissue injury like a strain, such arguments are "the equivalent of challenging the reasonableness and necessity of a particular treatment." *St. Joseph's Ctr. v. Workers' Comp. Appeal Bd. (Williams)* (Pa. Cmwlth., No. 2062 C.D. 2010, filed Aug. 23, 2011), slip op. at 30.[7] When Employer decided to act unilaterally, without filing a review petition or UR petition challenging, respectively, the causal relationship or reasonableness and necessity of the recommended surgery, it violated

---

[7] *St. Joseph's Center* is cited for its persuasive value in accordance with Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

14

the Act and became subject to penalties. *McLaughlin*, 808 A.2d at 289-90. As we explained in *McLaughlin*:

> This Court has consistently taken the strong position against the employer's unilateral cessation of medical benefit payment by holding that the employer's unjustified and unilateral cessation or modification of the claimant's benefits without prior authorization triggers the penalty provision of Section 435 of the Act.

*Id.* at 290. Since the record supports the WCJ's finding that Employer's unilateral actions violated the Act, we cannot say that the WCJ's judgment was manifestly unreasonable, that the WCJ misapplied the law, or that the WCJ's actions were "a result of partiality, prejudice, bias or ill will." *Allegis Grp.*, 7 A.3d at 327 n.3. Thus, there was no abuse of discretion in awarding a penalty.

Finally, Employer contends the WCJ and Board did not address Adjuster's December 2015 preauthorization of the surgery. Employer maintains this good faith offer should have been considered and, if it had been, penalties would not have been awarded. Claimant responds that the WCJ and Board did consider and address the ultimate preauthorization, as reflected in their written decisions.

As Claimant points out, Employer's argument that the WCJ and Board did not consider or address the December 2015 preauthorization is belied by the decisions issued. The WCJ made findings of fact about the December 23, 2015 fax sent by Adjuster to Dr. Macielak and concluded that Employer violated the Act up to and including December 22, 2015, the day before the fax. (FOF ¶¶ 10, 16; COL ¶ 2.) The Board similarly noted the fax sent by Adjuster in its opinion. (Board Opinion at 4.) Again, Employer's argument requests this Court to substitute its discretion for that of the WCJ and overturn the WCJ's penalty award. Having found no abuse of discretion, we may not infringe upon the WCJ's discretion.

Accordingly, we affirm.

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

G.O. Carlson, Inc.,                          :
                        Petitioner            :
                                              :
            v.                                :      No. 1068 C.D. 2018
                                              :
Workers' Compensation Appeal                  :
Board (Trauterman),                           :
                        Respondent            :
                                              :

# **O R D E R**

**NOW**, March 12, 2019, the Order of Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER**, Judge